UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES SAM<br>3616 Pear Tree Court, #32<br>Silver Spring, MD 20906<br>(301) 871-0669<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF,<br>in his capacity as SECRETARY,<br>DEPT. OF HOMELAND SECURITY;<br>OFFICE OF THE CHIEF COUNSEL,<br>20 Massachusetts Avenue. NW, Rm 4025<br>Washington, D.C. 20529<br><br>    Defendant. | CASE NUMBER 1:05CV 01777<br><br>JUDGE: Reggie B. Walton<br><br>DECK TYPE: Employment<br><br>DATE STAMP: 09/7/2005 |

**AMENDED COMPLAINT**
(Discrimination/Harassment/ and Retaliation)

**INTRODUCTION**

Plaintiff, Charles Sam, a District Adjudications Officer ("DAO") at the Department of Homeland Security, has been subjected to discrimination, harassment, and retaliation based on his gender and national origin. Similarly situated United States-born women have not been subjected to such treatment. Defendant's actions have had an adverse impact upon the terms, conditions and privileges of Mr. Sam's employment, causing present and future harm and loss to his professional and personal life. Mr. Sam filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") which found against him on May 31, 2005. Mr. Sam, acting pro se, now

timely appeals this EEOC decision.   Here, he seeks damages to compensate him for his injuries and injunctive, declaratory and equitable relief to prevent further harm to himself. This relief is being sought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Opportunity Act of 1972 and the Civil Rights Act of 1991 (Title VII), 42 U.S.C. 2000e-16 *et seq.*  All conditions precedent, if any, to bringing this lawsuit have been waived or excused, or have otherwise occurred.

NOW COMES Mr. Charles Sam who, pursuant to Rule 3 and 57, Federal Rules of Civil Procedure, brings this civil action against Defendants and, in support thereof, complains and alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, which gives the district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and under Title VII.

2.  The acts and omissions complained of occurred in the offices of Defendant's Washington District offices.  Venue is proper pursuant to 28 U.S.C. § 133(a) and under 42 U.S.C. § 2000e-16(d).

## PARTIES

3.  Mr. Sam is a naturalized U.S. citizen of Ghanaian origin who worked his way to earn a Master of Business Administration degree from the Graduate College of Business of the University of New Orleans, and a Juris Doctor degree from the Capital University Law School in Columbus, Ohio.  He has lived continuously in the United States for more than twenty years.  Mr. Sam began working for Defendant Agency on or

about July 28, 2002 as a DAO at the GS-07 level as a Term employee, with the stated intention of pursuing a career in U.S. Immigration law and policy with the Agency. He was consistently one of the best producers on the team of DAOs. Over the past almost three and one-half years, he attained successive step promotions from the GS-7 grade level, through the GS-9 and GS-11 grade levels, to his current grade level of GS-12.

4. Defendant, Michael Chertoff, is Secretary of the Department of Homeland Security.

## NATURE OF ACTION/FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. In July 2002, Mr. Sam, then a temporary resident of Atlanta, Georgia, accepted an offer of term employment with the Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), Washington District Office.

6. At that time, he became the only male DAO in his unit, out of a total of from ten to fifteen DAOs.

7. Almost immediately upon commencement of employment, many of the female DAOs in Plaintiff's unit began making comments to Mr. Sam wondering how long he would last since none of the prior male DAOs had lasted very long under the supervision of Sylvia Welch, Director and Supervisory DAO of the Washington District Office at USCIS.

8. Also, quickly after he started working as a DAO in the Washington District Office of USCIS, management set a tone that encouraged others in the office to believe they could treat Mr. Sam in a derogatory, offensive and discriminatory manner.

9. On or about February 2004, around the time of the Black History month celebrations, Mr. Sam was having lunch in the small lunch room in the old office, when

Phyllis Howard, the District Director of the Washington District Office of USCIS, who had also been having lunch with another employee, suddenly turned around and asked Mr. Sam: "Where are you from again? Ghana? Isn't that where all the slaves came from?"

10. On another occasion, on or about February 2004, a fellow-DAO, Ms. Francine Sanders, sent Mr. Sam a derogatory email (Exhibit 1, pp 4 & 5 of 6 of original Record of Investigation) admonishing "foreigners" who dared speak their minds to leave the country.

11. On several occasions, Ms. Howard made false and disparaging accusations against Mr. Sam to his then supervisor, Ms. Welch.

12. Despite Mr. Sam's consistently excellent performance, these accusations were calculated to denigrate his work performance and create the false impression that his work was unsatisfactory.

13. For example, on one such occasion, Ms. Howard baselessly reported to Ms. Welch, in very derogatory language, that *whenever* she had requested files from Mr. Sam, the latter had not been able to produce said files.

14. In fact, Ms. Phyllis Howard had only once personally requested a file from Mr. Sam, and had, almost immediately, as if on second thought, asked Mr. Sam not to rush but rather send her an email once he had located the file.

15. Mr. Sam dutifully sent the requested email and personally sent the file up to Ms. Howard.

16. On another occasion, Ms. Welch informed Mr. Sam that Ms. Howard had reported to her that Mr. Sam had been wrongfully eating his lunch in his office. In

fact, on that particular day, Mr. Sam had decided not to have lunch when he opened the lunchroom door and noticed the small room over-crowded with all-female employees with two television sets blaring segments of soap operas.

17. It was not until later that Mr. Sam was informed by one of the ladies that the lunchroom "crowd" had included Ms. Howard.

18. While Mr. Sam was using the remainder of his lunch break to meditate, he was taken aback by Ms. Welch's striding into his office and remarking, "What is it between you and Ms. Howard? I hate to be placed in the middle like this."

19. Ms. Welch then informed Mr. Sam that Ms. Howard had just left her office after demanding to know why "Mr. Sam had been eating lunch in his office." Mr. Sam denied the unfounded accusation, and proceeded to show Ms. Welch his still-wrapped sandwich in a brown-bag on a chair across the desk in his office.

20. Following the above, Ms. Welch failed to timely complete and submit the requisite paperwork to effectuate Mr. Sam's promotion to the GS-11 grade level.

21. Moreover, even though Mr. Sam performed his duties more assiduously than most other DAOs in the unit who, at the time in question, were all female, he received an annual evaluation from Ms. Welch that he later discovered was unaccountably inferior to the evaluations of the female, United States-born DAOs.

22. Again, following the general pattern of discriminatory behavior and harassment, Ms. Howard declined Mr. Sam's timely request to have the month of July, 2004 off without pay in order to prepare to sit for the Bar examination.

23.     The pretext given to Mr. Sam for denying his leave without pay to prepare for the Bar examination was that the Agency was planning to move to its present location in Fairfax, and all hands were needed on deck.

24.     The move, however, never took place until on or about November of 2004.

25.     Mr. Sam sometimes went to the office of Shari Golston, a fellow DAO, to discuss work-related matters concerning the more difficult cases.

26.     On or about May 2004, Ms. Welch began stalking Mr. Sam and generally precluded him from entering the office of Ms. Golston.

27.     If Mr. Sam entered Ms. Golston's office, Ms. Welch would stand in the doorway and "stare down" Mr. Sam.

28.     On or about November 2004, during the first Thursday of the month staff meeting called by Ms. Howard at the 2675 Prosperity Avenue office in Fairfax, Virginia, Mr. Sam brought Ms. Welch's behavior to the attention of Ms. Howard.

29.     Also, because Mr. Sam's supervisors' behavior had become intolerable, Mr. Sam filed a formal complaint with the EEOC on May 03, 2004.

30.     Mr. Sam was asked by the first EEOC contract investigator assigned to his case what could be done to rectify the situation, to which Mr. Sam responded that he wanted the harassment and discrimination to cease and to be transferred to a comparable position at the Headquarters office, if at all possible.

31.     The investigator reported to Mr. Sam that after he had apprised Ms. Howard of Mr. Sam's concerns and request to be transferred, Ms. Howard had responded that as long as she was the Director, she would never concur to Mr. Sam's transfer to a

position at the Headquarters office. Ms. Howard provided no reason for refusing to consent to Plaintiff's transfer.

32. After Mr. Sam filed his case with EEOC, the harassment and discrimination did not cease. Mr. Sam continued to be subjected to harassment and both direct and indirect discriminatory behavior from Ms. Welch, even though by this time, she was no longer his direct supervisor.

33. Even today, Ms. Welch stalks Mr. Sam whenever he attempts to enter Ms. Golston's office, the latest instance occurring on October 28, 2005 at around 8:30 A.M.

34. Although it is customary for employees to occasionally visit other employees' offices, Mr. Sam was not permitted to visit Ms. Golston's office for any reason.

35. Ms. Golston, in fact, was admonished by Ms. Welch in no uncertain terms for allowing Mr. Sam in her office.

36. Ms. Golston informed Mr. Sam that she felt her job was in jeopardy simply because Mr. Sam visited her office to confer on difficult cases.

37. These continuing discriminatory and harassing actions by Defendant have been in retaliation for Mr. Sam's filing a formal complaint with the EEOC.

38. All term DAOs in Mr. Sam's office have been advised and encouraged by Management to apply for permanent positions since the term positions were soon to be phased out and the Washington District Office had several permanent DAO positions that had been vacant for years.

39. Ms. Howard at a lunch conference told the DAOs to apply for these permanent positions.

40.     Nonetheless, over the course of the past three years, Mr. Sam has been passed over for consideration for every permanent position for which he has applied in the Agency, even when it has been clearly evident that he was more than qualified.

41.     For example, Mr. Sam applied for a permanent position with the Washington District Office.

42.     On June 28, 2005, Mr. Sam took a scheduled writing test at Defendant Agency's new premises in Fairfax, Virginia. Ostensibly, this writing test was a prelude to the term DAOs being hired as permanent employees.

43.     Mr. Sam received scores of 97 and 98 respectively at the GS-11 and GS-12 levels.

44.     Mr. Sam's name was sent by the Office of Personnel Management ("OPM") to Ms. Howard for consideration for a permanent DAO position.

45.     Ms. Howard announced at a staff meeting on October 06, 2005 that she had hired fourteen (14) new permanent DAOs who were currently having their background checks done.

46.     When Mr. Sam inquired of Ms. Howard in her office on October 12, 2005 if he was one of the fourteen, Ms. Howard responded in the negative. She gave no further reason beyond her adamant assertion that she had the prerogative to choose from any OPM list that she preferred. Ms. Howard told Mr. Sam that one of the fourteen she had hired was a term employee from his office. This person is a native-born American, female employee.

47.     Mr. Sam also applied for two permanent DAO positions. He recently received written notification that one of the positions had been filled through so-called "alternative" means.

48.     Defendants have created an extremely hostile, discriminatory and harassing work environment for Mr. Sam. No employee should have to work under these conditions.

49.     As a direct result of the harassment, discrimination and retaliation inflicted upon Mr. Sam, he has been under intense stress and his normally medicinally controlled hypertension become uncontrolled.

50.     Additionally, at the apogee of this controversy, Mr. Sam was diagnosed with diabetes—a condition that he did not have before and of which he has no family history.

51.     Mr. Sam, on numerous occasions, attempted to resolve this issue without court intervention, requesting through the EEOC contract investigator that the illegal treatment cease and that he be transferred to a comparable position in another office. Only after futile reasonable efforts toward resolution did Mr. Sam cause the commencement of this lawsuit.

## COUNT I

## VIOLATION OF TITLE VII: GENDER AND NATIONAL ORIGIN DISCRIMINATION

52.     Mr. Sam re-alleges, and incorporates by reference as if set forth fully herein, the statements in paragraphs 1 through 51 above.

53.     Mr. Sam is a male, naturalized American citizen, born in Ghana.

54.     Defendant's mistreatment of Mr. Sam is motivated by the fact that he was the only male in an all-female office and his national origin is Ghanaian.

55.     Defendant continuously and systematically illegally discriminated against and harassed Mr. Sam based on his gender and national origin.

56.     For instance, Mr. Sam was asked whether all the slaves came from his country of national origin. He was also admonished to leave the country as a "foreigner" who dared to speak his mind.

57.     False accusations were made against him.

58.     Although Mr. Sam performed his duties more assiduously than most other DAOs in the unit who were all female, he received an annual evaluation that was unaccountably inferior to the evaluations of the female, United States-born DAOs.

59.     Defendant failed to timely complete and submit the requisite paperwork to effectuate Mr. Sam's promotion to the GS-11 grade level.

60.     Mr. Sam was denied leave without pay to study for the Bar examination.

61.     Mr. Sam has been passed over for consideration for every permanent position for which he has applied in the Agency, even when it has been clearly evident that he was more than qualified.

62. United States-born, female DAOs in the same unit were not subjected to such discrimination and harassment.

63. As such, this mistreatment constitutes unlawful discrimination against Mr. Sam on the basis on gender and national origin in violation of Title VII.

64. As a result of Defendant's unlawful discrimination, Mr. Sam has suffered and continues to suffer actual adverse and harmful effects and injuries which have impacted negatively on the past, present and future terms, conditions and privileges of his employment, causing substantial harm and loss to him professionally and personally. This harm includes, but is not limited to, the foreclosure of job opportunities which would have provided Mr. Sam permanent work status. Mr. Sam has also suffered the loss of self-esteem, anxiety, stress, humiliation and insult that has caused him to have severe hypertension, which the doctors have not been able to bring under control, and diabetes.

65. Defendant Chertoff, in his official capacity as Secretary of the Department of Homeland Security, is liable to Mr. Sam under Title VII for unlawful discrimination.

## COUNT II

### VIOLATION OF TITLE VII: RETALIATION AND REPRISAL

66. Mr. Sam re-alleges, and incorporates by reference as if set forth fully herein, the statements in paragraphs 1 through 65 above.

67. Defendants retaliated against Mr. Sam when he instituted an EEOC complaint by, among other measures, informally ordering a fellow DAO not to admit Mr. Sam into her office.

68. No other employee was effectively barred from visiting another employee's office.

69. Defendant retaliated again Mr. Sam after he filed a complaint with EEOC by passing him over for consideration for every permanent position for which he has applied in the Agency, even when it has been clearly evident that he was more than qualified.

70. American-born, female DAOs in the same unit were not subjected to such retaliation.

71. As such, this mistreatment constituted unlawful retaliation against Mr. Sam because he filed a complaint at EEOC in violation of Title VII.

72. As a result of Defendant's unlawful retaliation, Mr. Sam has suffered and continues to suffer actual adverse and harmful effects and injuries which have impacted negatively on the past, present and future terms, conditions and privileges of his employment, causing substantial harm and loss to him professionally and personally. This harm includes, but is not limited to, the foreclosure of job opportunities which would have provided Mr. Sam permanent work status. Mr. Sam has also suffered the loss of self-esteem, anxiety, stress, humiliation and insult that has caused him to have severe hypertension, which the doctors have not been able to bring under control and diabetes.

73. Defendant Chertoff, in his official capacity as Secretary of the Department of Homeland Security, is liable to Mr. Sam under Title VII for unlawful retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

1. Enter a judgment in favor of Plaintiff.

2. Declare that Defendant and any of Defendant's agents or persons acting for, with, by, through or under any of them cease and desist from any harassing or discriminatory acts and measures against Plaintiff.

3. Compel Defendant to cease and desist from any and all retaliatory measures against Plaintiff as a result of his complaints of discrimination, harassment and retaliation.

4. Order Defendant to review the evaluations prepared by Ms. Welch of Plaintiff and her other subordinates in the unit for 2002 and 2003.

5. Order Defendant to assign Plaintiff to a position commensurate with his qualifications and experience at a different location.

6. Award Plaintiff compensatory damages in the amount of three hundred and fifty thousand dollars ($350,000.00) for gender and national origin discrimination, harassment and retaliation and for the resulting personal injuries, including uncontrolled hypertension and diabetes, caused by stress, anxiety, humiliation and insult.

7. Award Plaintiff equitable damages including, but not limited to, lost wages, benefits and interest because the agency discriminated and retaliated against him based on gender and national origin when it refused to hire him for any permanent position for which he applied in the last three years.

8. Award such other such relief to Plaintiff as the Court deems just, proper and equitable.

9. Plaintiff also requests a court-appointed attorney and, if granted, a judgment awarding reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

Dated this 1ST day of November, 2005.

Respectfully submitted,

*/s/ Charles Sam*

Charles Sam (pro se)
3616 Pear Tree Court  #32
Silver Spring, MD 20906