EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1801 L Street, N.W., Suite 100
Washington, Dc 20507

| | |
|---|---|
| Charles Sam, | ) EEOC Case #: 100-2005-00013X |
| Complainant, | ) |
| | ) Agency #: CIS-04-E065 |
| v. | ) |
| Tom Ridge, Secretary, | ) COMPLAINANT'S RESPONSE TO AGENCY'S |
| | ) MOTION FOR DECISION WITHOUT A HEARING |
| Department of Homeland Security, | ) AND SUMMARY JUDGMENT |
| Respondent Agency | ) HON. GERALD GOLDSTEIN |
| | ) ADMINISTRATIVE JUDGE |

## COMPLAINANT'S RESPONSE TO AGENCY'S MOTION FOR DECISION WITHOUT A HEARING AND SUMMARY JUDGMENT

Pursuant to Respondent Agency's Motion for Decision Without a Hearing dated January 28, 2005, Complainant submits this response to quash same and, and requests afresh a hearing before the Administrative Judge on the merits of the above complaint. Complainant relies on 28 U.S.C. , sections 1331,1337, and

1343, under the U.S. Equal Employment Opportunity Law.

### VENUE

The acts and omissions complained of occurred in the offices of Respondent Agency in the State of Virginia in the judicial district of Arlington County. Venue is

proper pursuant to 28 U.S.C. section 1331(a)



DEFENDANT'S EXHIBIT 5

## APPLICABLE LAW

Complainant refers to Title VII of the U.S. Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII), which forbids discrimination of any form in Federal employment based on race, color, religion, gender, and national origin. 42 U.S.C. Section 2000e-16.

## FACTS AND ANALYSIS

Whereas most of the pertinent facts are contained in the original Report of Investigation (ROI), Complainant would like to highlight the following issues in support of his motion to quash Respondent's Motion. Even though the Agency's

Office of Equal Employment Opportunity asserts that the "accepted issue in this case is whether the complainant experienced discrimination on the basis of gender (male), reprisal (prior EEO activity), and national origin (Ghanaian) when his then-supervisor failed to prepare the paperwork needed for him to receive a career ladder promotion to a GS-11 pay grade for which he qualified on July 29, 2004", the Complainant avers that he had suffered intolerable and inexcusable harassment from both Ms. Howard (Director of Services) and Ms. Welch (ex-Supervisor) which culminated in Ms. Welch failing to timely prepare and submit

the afore-mentioned paperwork. Complainant was the target of numerous discriminatory and harassing actions from both Ms. Phyllis Howard and Ms. Sylvia Welch that amounted to an intolerable and extremely hostile work environment, only a few of which are cited herein for the sake of expedience:

2

a) As stated in the original ROI, Ms. Howard once reported to Complainant's then-supervisor, Ms. Welch in very derogatory language that whenever she had requested files from Complainant, Complainant was not able to produce said files. This fact was relayed to Complainant by Complainant's ex-Supervisor, Ms. Welch, in Complainant's office when she came to inquire about said file. In reality, Ms. Howard had only once personally requested a file from Complainant, and had almost immediately, on second thought, requested Complainant to take his time but send her an e-mail once Complainant had located the file. Complainant dutifully sent the e-mail, and personally forwarded the file as requested.

b) Ms. Howard had reported to Ms. Welch and falsely accused complainant of eating lunch in his office. Since the details of this fact were reported by Complainant to the contract investigator who conducted an investigation in the Summer of 2004, a mere summary here might suffice. Complainnant had decided not to have lunch for personal reasons when he opened the small lunchroom door and noticed the place crowded with all-female employees with both television sets in there blaring with soap opera segments. Complainant learnt only later that the "crowd" included Ms. Howard. Presently, while Complainant was using the remainder of his lunch break to meditate, he was suddenly roused by Ms. Welch who remarked rather startlingly; *"what's it between you and Ms. Howard ... I hate to be placed in the middle like this"*. Ms. Welch then proceeded to inform Complainant that Ms. Howard had just left her (Ms. Welch's) office and demanded to know why Complainant was eating his lunch in his office instead of in the lunchroom. Complainant denied the unfounded accusation, and showed Ms. Welch the still-wrapped sandwich in a brown-bag on a chair across the desk in the office.

Ms. Francine Sanders, a fellow-DAO, had sent Complainant a derogatory e-mail admonishing foreigners who dared speak their minds to leave this country.( Exhibit 1, pp.4 & 5 of 6 of original ROI). Complainant insists that it was the tone set by Management (a tone clearly in violation of Title VII of the U.S. Civil Rights act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (title VII), that encouraged Ms. Sanders to believe she could send such a blatantly derogatory e-mail at will.

d) Following the above and other patterns of harassing and discriminatory behavior, Ms. Welch negligently failed to timely complete and submit the requisite paperwork to effective my promotion to the GS-11 pay level.

e) Even though Complainant performed his duties more assiduously than most, if not all, of other DAOs, who were all female, Complainant was given an annual evaluation that he later discovered was inferior to the evaluations of the female DAOs. Complainant would therefore like the opportunity to be accorded a discovery process to have explained why the native-born and female DAOs under Ms. Welch deserved a better annual evaluation than he.

f) Again, following the general pattern of discriminatory behavior outlined above, Ms. Howard declined my timely request to have the month of July off to prepare to sit for the Bar exam, offering, instead, the untenable alternative of taking a couple weeks off and returning to work for a month -- an alternative that anyone with the least inkling of what it takes to prepare for the Bar exam would find impractical.

4

The discriminatory and retaliatory practices against Complainant persisted when the Respondent Agency moved its offices from Arlington County to the present location at 2675 Prosperity Avenue in Fairfax, Virginia. As late as December 2, 2004, Ms Welch continued to discriminate, and retaliated, against Complainant by intimidating a fellow-DAO, Ms. Shari Golston, whom Complainant conferred with intermittently on work issues, and admonishing her not to allow Complainant into her office. Ms. Golston finally confided in Complainant that she felt her job was in jeopardy on account of Complainant's visiting her office to confer with her on difficult cases. Ms Howard is aware of this fact because Complainant brought the issue to her attention in the presence of all DAOs and most Supervisors during the first general meeting in the new building convened by Ms. Howard. No other DAO, female or native-born, has been forbidden to enter another employee's office.

h) When the first contract investigator assigned to this case conveyed to Ms. Howard Complainant's request to be transferred to a comparable position at Headquarters to avoid the extant hostile work environment, the investigator quoted Ms. Howard as replying that as long as she was Director of Services for the Agency, she would never consent to Complainant's transfer as requested.

Respondent Agency asserts that Complainant has not established a *prima facie* case of prohibited discrimination in spite of ample evidence to the contrary. Respondent asserts further that Complainant "has failed to put forward any similarly situated person who received better treatment than him ..." This assertion is plainly not borne out by the facts. Complainant humbly avers that he did accept the position of District Adjudication Officer to enter into a popularity

ontest. Therefore whether or not he was liked by Ms. Howard or Ms. Welch was totally immaterial to him. Complainant regards himself as a highly professional employee whose sole objective at work is, and has always been, to get his assigned duties accomplished. The issue in this case is not about who received so-called "better-treatment" than Complainant. The issue is about Respondent breaking Federal law by discriminating against, and harassing, Complainant (and retaliating against same after he filed his complaint) for no other reason than his gender (male) and national origin (Ghanaian). A proper formal hearing, after the requisite discovery and interrogatories, will bear out Complainant's testimony and assertions.

Concerning the denial of Complainant's request for time off to take the Bar exam, Respondent's denial that "Ms. Welch had any involvement in denying the LWOP" is irrelevant. The fact of the matter is that Management made that decision, and Ms. Welch was, and is, part of that Management. As has already been stated above, the so-called alternative of taking off for two weeks and coming back to work for a month was untenable because it would entail working for the whole month of July and taking the Bar exam at the end of that same month. That can hardly be termed a viable alternative. It is significant that this denial was made after Complainant had filed his formal complaint.

Respondent quotes Ms. Howard as saying in her affidavit that " *Mr. Sam along with all other employees working in his unit were aware in March 2004 that June would be the month that employees would work toward reducing their backlog of cases*". (IF at Exhibit 7, pp. 3-4). Additionally, Respondent asserts that Complainant *"had over 150 cases that required adjudication"*.

First, the fact that everyone was aware that June was a backlog-reduction month did not stop other employees' vacations from being approved. Secondly, it is highly inaccurative (and, indeed, appears to be deliberately deceptive) for Respondent to assert that Complainant "*had over 150 cases that required adjudication*". Even if one were to concede the number of cases in Complainant's office at the time in question to be about 150, other DAOs had a much higher number of cases than that. The proper discovery would reveal the number of cases that each DAO had in his or her office. Indeed, one female DAO, whose name Complainant will divulge with the Commission's permission, had well over 500 cases in her office at the time in question. Photographic evidence of this is available, and will be provided if needed. Indeed, it was customary for Management to, at least indirectly, request other DAOs to work on week-ends and after regular hours to work on reducing that particular DAO's caseload. Additionally, various clerks were routinely told to sort and work on that DAOs cases. Again, the proper discovery and interrogatories on these witnesses would reveal Complainant was, and still is, the target of discriminatory practices by Respondent.

## CONCLUSION

Complainant believes that he has enough evidence to prove harassment and discriminatory practices against him by Respondent based on gender and national origin. Additionally, Complainant can and will show that Respondent retaliated against him after he had filed his complaint, as evidenced, for instance, by Ms. Welch directly or indirectly intimidating and

coercing Ms. Golston to prevent Complainant from entering her (i.e., Ms. Golston's) office. No other employee is prevented from legitimately visiting other employees' offices. Respondent's actions have created an intolerable and hostile work environment for Complainant, and created conditions under which no employee should have to work. Title VII of the Civil Rights Act, as amended, forbids the discrimination and retaliation meted out to Complainant by the Respondent. 42 U.S.C., section 2000e-16. Dismissing Complainant's request for a formal hearing, and issuing a decision without a hearing, would deprive Complainant of his constitutional due process rights. Complainant therefore requests that Respondent's Motion for Decision Without a Hearing and Summary Judgment be quashed, and humbly requests anew a formal hearing before an Administrative Judge on the merits of the case.

Dated: February 20, 2005

Respectfully submitted,

By: _____

Charles B. Sam, MBA, JD
3616 Pear Tree Court. #32
Silver Spring, MD 20906
(703) 285-6058 (W)
(301) 871-0669 (H)

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Response to Agency's Motion for Decision Without a Hearing was sent this date by first-class mail to the following:

>Mr. Mark Allen
>Associate Counsel
>U.S. Citizenship and Immigration Services
>Department of Homeland Security
>20 Massachusetts Ave., N.W., Room 4025
>Washington, DC 20529

>Charles B. Sam, MBA, JD

Dated: February 20, 2005