**RECEIVED**

MAY 1 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES SAM, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 05-1777(RBW) |
| | ) |
| MICHAEL CHERTOFF, | ) |
| Secretary, U.S. Department of Homeland Security, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH DEFENDANT'S MOTION TO DISMISS, FOR SUMMARY JUDGMENT, OR TO TRANSFER PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, still acting pro se due to inability to afford an attorney, hereby refutes Defendant's claim that Plaintiff failed to state a claim upon which relief can be granted. Plaintiff, that venue does not lie with this Court, and that Plaintiff did not exhaust all administrative processes. In that sense, Defendant merely rehashes what was stated in their first motion to dismiss. Defendant also merely seizes unfairly upon Plaintiff's relative legal inexperience to dwell upon certain possible technical errors that should not be consequential in the Court's decision to render fair and just judgment. For instance Plaintiff's reference, in his Motion to Quash ..., to the "...Constitution, laws, and treaties of the United States ," Mem. P.&A in support of Pl.'s Mot. Quash, fifth page, was obviously not intended by Plaintiff to imply a new jurisdictional stance in this case and at this juncture. The fact is that Plaintiff, in his amended Complaint, dutifully stated and

1

described Defendant's harassment and discrimination upon which Plaintiff's complaint was based. Plaintiff further rejects and refutes Defendant's claim that "…there are no genuine issues in dispute…". Plaintiff maintains that the proper discovery will reveal Defendant's methodical harassment and discrimination, and that when Plaintiff, in defense, filed a formal complaint, first with the EEOC and subsequently in Federal Court, Defendant illegally retaliated against Plaintiff by hiring less qualified candidates to permanent positions in lieu of hiring Plaintiff, in spite of the fact that Plaintiff scored the highest points in a written test specifically instituted for the hiring of term employees to permanent positions.

Further, Plaintiff avers that Defendant's move to transfer this suit to the Eastern District of Virginia be quashed as without merit. The proper venue for this suit is Washington, D.C., where the headquarters of Defendant Agency is located. Defendant Agency is a United States federal agency appropriately named the Washington District Office of the U.S. Citizenship and Immigration Services, a subset of the Department of Homeland Security. The headquarters for both the U.S. Citizenship and Immigration Services and the Department of Homeland Security, and therefore their nerve centers, are based in Washington, D.C.

In support of this response, Plaintiff respectfully refers the Court to the accompanying memorandum of facts and points. Plaintiff further attaches a proposed order consistent with the relief being sought.

Respectfully submitted,

_____
CHARLES B. SAM
3616 Pear Tree Court, #32
Silver Spring, MD 20906
Ph: (301) 871-0669

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES SAM, )<br>)<br>      Plaintiff )<br>)<br>)<br>      v. )<br>)<br>MICHAEL CHERTOFF, )<br>  Secretary, U.S. Department of Homeland )<br>  Security, )<br>)<br>      Defendant )<br>) | Civil Action No. 05-1777(RBW |

**MEMORANDUM OF FACTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH DEFENDANT'S MOTION TO DISMISS, FOR SUMMARY JUDGMENT, OR TO TRANSFER PLAINTIFF'S AMENDED COMPLAINT**

## I.    BACKGROUND

Plaintiff is a naturalized U.S. citizen of Ghanaian nationality who commenced "term" employment with the Washington District Office of the erstwhile Immigration and Naturalization Service ("INS"), currently the U.S. Citizenship and Immigration Services, about July of 2002. Plaintiff was the only male District Adjudications Officer ("DAO") in his unit when he initially commenced his employment. Plaintiff soon began to hear from several of the female DAOs comments such as: "I wonder how long he will be able to last here". It soon became apparent to Plaintiff that the Agency was a female-dominated one that might not encourage or appreciate, in particular, strong Black characters with the distinction of having been born and reared outside of the mainland. On at least one occasion, a female DAO forwarded to

Plaintiff an email, in which she professed belief, admonishing all immigrants who dared to exercise their constitutional right to dissent to leave the country. Only management's, perhaps tacit, acquiescence would give an employee the audacity to believe that actions such as this were acceptable in the workplace.

Subsequently, the District Director herself, Phyllis Howard, began to spread wild and baseless untruths about Plaintiff to at least one individual, Plaintiff's then-supervisor Sylvia Welch. On one occasion, Phyllis Howard callously and baselessly reported to Sylvia Welch that Plaintiff was eating lunch in his office when he was not supposed to do so. In fact, Plaintiff did not have lunch on the day in question. This was in spite of the fact that many other employees, including the Director herself, routinely ate lunch in their respective offices.

On another occasion, Phyllis Howard untruthfully reported to Sylvia Welch that Plaintiff constantly could not locate files that she (Phyllis Howard) had requested, obviously intending to falsely cast doubt at Plaintiff's competence. In actual fact, Phyllis Howard had heretofore only once requested a file from Plaintiff, and Plaintiff had promptly produced the requested file.

On yet another occasion, using the pretext of the "impending" Agency relocation, Defendant refused to permit Plaintiff to take one month off in order to prepare to sit for the Maryland Bar examination. (In fact, the Agency did not relocate until about November of 2004). Instead, Defendant suggested that Plaintiff take only a portion of the requested time off without pay, return to work, take another portion of time off without pay, and return to work again just prior to sitting for the Bar Examination – an arrangement totally non-conducive to studying for the Bar examination.

Subsequent to this, Ms. Sylvia Welch initially neglected to prepare and submit the requisite paperwork to effect Plaintiff's promotion to the GS-11 level.

Additionally, Ms. Welch unaccountably gave Plaintiff a much lower evaluation than the female DAOs on her staff in spite of Plaintiff's diligence, assiduity, and excellent professionalism at his position. Plaintiff's requests for an explanation of the vast discrepancies have heretofore been ignored.

Furthermore, Defendant illegally and persistently continued to harass and discriminate against Plaintiff by unofficially yet effectively barring Plaintiff from entering the office of another DAO, Ms. Shari Golston, to confer on work-related issues. No other DAO, to the knowledge of Plaintiff, was ever barred from entering the office of another employee.

Plaintiff avers that a proper discovery process will unearth the untruths that have been pronounced under oath by Defendant, and exonerate Plaintiff by showing that Plaintiff was harassed and illegally discriminated and retaliated against by Defendant. Even though Discovery may not be required to resolve issues before the Court, Plaintiff has asserted, and does still assert, that the fact that Defendants lied under oath when federal investigators from Vermont conducted the initial background investigations is a serious enough offense which, if proved, could go a long way in proving Plaintiff's case. Additionally, Plaintiff still is being retaliated against by Defendant, presumably on account of initiating this lawsuit, and discovery is one way to uncover the truth before the Court.

Furthermore, Plaintiff has shown, and has since obtained further evidence to show, that Defendants acted illegally when they refused to hire Plaintiff to a

permanent DAO position, but instead hired other candidates with inferior qualifications, in spite of the fact that Plaintiff obtained the highest score of all the candidates who took a special writing test that Defendant had consistently indicated was going to be the criterion for making "term" DAOs permanent federal employees.

## II. STANDARD OF REVIEW

Defendant cites Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412 ,*2 (D.D.C. Jan.29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. Denied, et alia, and wrongly relies on same to support its motion to dismiss for lack of Subject Matter Jurisdiction. Defendant rightly states that "…subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power."

The fact of the matter is that Plaintiff has shown, and will further show, that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. Sections 1331,1337, and 1343, which gives the district courts original jurisdiction of *all* (emphasis and italics Plaintiff's) actions arising under the Constitution, laws, or treaties of the United States, and under Title VII of the Civil Rights Act of 1964, as amended by the Equal the equal Opportunity Act of 1972, and the Civil Rights Act of 1991 (Title VII), 42 U.S.C. 2000e-16 *et seq.*

Plaintiff has raised issues of illegal discrimination, egregious harassment, and subsequent on-going retaliation, which have negatively impacted, and continue to negatively impact, Plaintiff in ways other than loss of revenue. Plaintiff's health has deteriorated significantly since the commencement of Defendant's illegal actions, as

evidenced by the worsening of Plaintiff's hypertensive condition as well as the onset of a diabetic condition. Additionally, Plaintiff has relied on no matters outside the pleadings of this case. The factual allegations of Plaintiff, while not occurring at one time, are part and parcel of the triple-charge of harassment, illegal discrimination, and illegal retaliation, which Plaintiff has consistently raised, and seeks to prove through the requisite discovery process. Therefore, Plaintiff's constitutional right to have a hearing to adjudicate the merits of his factual claims of harassment, illegal discrimination and retaliation by Defendant, subsequent to the proper discovery process, would be irreparably jeopardized if this case were dismissed. Plaintiff has shown, and will continue to show during discovery, that Defendant has, among other things, lied under oath, and has illegally harassed, discriminated and retaliated, and continues to do same, against Plaintiff, and that there are real issues of material fact entitling Plaintiff to judgment as a matter of law.

### III. ARGUMENT

#### A. Defendant's Claim that Plaintiff Failed to Exhaust Administrative Remedies Should be Quashed as Baseless.

The fact of the matter is that Plaintiff was extremely reluctant to commence action with the Equal Employment Opportunity Commission (EEOC) from the very onset Defendant's illegal actions. Plaintiff attempted to resolve every issue, first with his then-supervisor, Sylvia Welch, and subsequently with District Director Phyllis Howard, all to no avail. In fact, it was only when Plaintiff discovered and recognized that Defendants were on the path of falsely, callously and unprofessionally attempting to place Plaintiff's well-known and respected integrity and professionalism in jeopardy that Plaintiff sought protection by filing an initial complaint with the EEOC. Plaintiff followed all

administrative procedures, including formally disputing Agency claims with Ms. Weaver, an agency official. Defendant is, at best, highly inaccurate and, at worst, negligent in asserting that "there is no indication that plaintiff properly sought to amend his allegation related to denial of leave without pay by alleging like or related claims, or sought to raise new allegations by seeking EEO counseling (and exhausted on those claims) …". The fact of the matter is that Plaintiff did precisely that and more, writing a detailed letter to Ms. Weaver stating his disagreement with the Agency point of view as expounded by Ms. Weaver, and offering his version of what actually transpired at the employment location and, therefore, what should be included in the complaint. Plaintiff still has a copy of that letter to Ms. Weaver. Plaintiff never received a response to his letter from Ms. Weaver. Defendant's motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, as well as for summary judgment, should be quashed as indefensible and baseless. Alternatively, judgment should be granted to Plaintiff as a matter of law.

### B. Denial of Leave Without Pay for One Month is Adverse Action; Agency's Purported Business Reason for Denying Leave Unfounded & Discriminatory

As affirmed in Brown v. Brody, 199 F.3d. 446 (D.C. Cir. 1999), a "common element for discrimination and retaliation claims against federal employers, and private employers, is … some form of legally cognizable adverse action by the employer." Brown, 199 F.3d at 453.

Plaintiff did adversely suffer material consequences when Defendant denied him one month's unpaid leave to prepare for the Bar examination. When Plaintiff commenced employment at Defendant Agency, Plaintiff made it clear that, like most reasonably ambitious candidates, he did not anticipate remaining in the "dead-end" DAO position

eternally. While the Agency had had a history of enabling some law school graduates to enter positions in the legal area within the Agency prior to their taking and passing the Bar examination, all of Plaintiff's attempts to obtain a position in the various legal areas of respondent Agency proved futile. In order to advance in his chosen career field of federal immigration work, Plaintiff requested a month off without remuneration, during a noticeably slow season, in order to prepare to sit for the Bar examination. Plaintiff's research into the Agency's history revealed no other instance where an employee had been denied minimal time off in order to study for the Bar exam. In actual fact, law school graduates wishing to study for the Bar examination have been encouraged in the past to do so – except in the case of this Plaintiff. Defendant's denial of unpaid leave to Plaintiff occurred during the time period of this Complaint. Additionally, even though Defendant cites its 'impending' relocation as a reason for denying Plaintiff unpaid leave, the stated Agency relocation never occurred until about November of 2004, almost a year after the request was timely made.

Since the denial of unpaid time off for Plaintiff, Plaintiff has not been able to apply for any legal positions in the Agency since practically all such positions require having taken and passed *a* Bar examination. Additionally, Defendant's unreasonable and retaliatory refusal to change Plaintiff's status from "Term" to "Permanent" despite the fact that Plaintiff scored the highest marks (99%) in a writing test instituted by Defendant for the stated and sole purpose of turning "Term" employees into "Permanent" employees, and instead hiring candidates less qualified and experienced than Plaintiff, was an adverse personnel action that continues to negatively impact Plaintiff in his career goals and aspirations as well as in financial, economic and emotional terms. Also, most

employment openings commensurate with Plaintiff's experience and qualifications require that a candidate already be a permanent federal employee (i.e., "status" employee). Accordingly, Defendant's motion for dismissal should be quashed and judgment as a matter of law granted to Plaintiff. In the alternative, Plaintiff should be permitted to employ the requisite discovery process to prove his claims.

### C.     This Court *is* the Proper Venue for this Case; this Suit, and All its Claims, Should be Preserved in *this* Court and Venue.

Defendant merely seizes unfairly upon Plaintiff's relative legal inexperience to dwell upon certain possibly technical errors that should not be consequential in the Court's decision to render fair and just judgment. For instance Plaintiff's reference, in his Motion to Quash ..., to the "...Constitution, laws, and treaties of the United States ," Mem. P.&A in support of Pl.'s Mot. Quash, fifth page, was obviously not intended by Plaintiff to imply a new jurisdictional stance in this case at this juncture

The proper venue for this case, a case under Title VII, is the U.S. District Court for the District of Columbia because Washington, DC is where the headquarters of both Defendant Agency (U.S. Citizenship & Immigration Services) and its parent-organization (U.S. Department of Homeland Security) are located. In fact, Defendant Agency's proper name is the ***Washington District Office of the U.S. Citizenship & Immigration Services***. Washington, DC is the nerve center of Defendant Agency. It is where all major decisions of the organization are made. Practically no major decisions of Defendant's were made at 4420 N. Fairfax Drive, where Defendant Agency temporarily leased premises from which to conduct business decisions made at Defendant's Washington, DC headquarters. In fact, Defendant's temporary former location at 4420 N. Fairfax Drive was merely a convenient

political decision, as Federal offices may be located anywhere in the Washington DC metropolitan area that the political authorities deem appropriate for a variety causes. According to 42 U.S.C. Section 2000e-5(f)(3) et alia, a Plaintiff alleging illegal employment discrimination under Title VII can bring an action: "... (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such a practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice."

First, while Defendant maintains most, if not all of the pertinent employee records in South Burlington, Vermont, and Plaintiff resides in Silver Spring, Maryland, today's technological age makes it quite possible for requisite material and information to be produced at practically lightning speed. While Plaintiff may have been temporarily housed at Defendant's former location at 4420 N. Fairfax Drive, that fact was, and still is, a mere accidental result of the Federal government's choosing to spread federal offices around the Washington, DC area for various political reasons. As already noted above, Defendant's proper legal name is the Washington, DC District Office of the U.S. Citizenship and Immigration Services *not* the Virginia District Office of the U.S. Citizenship and Immigration Services. All Federal Departments and Agencies are intuitively presumed to be headquartered in, and directed from, Washington, DC. All their major decisions are made and disseminated from Washington, DC. Such is the case with the U.S. Citizenship and Immigration Services.

Secondly, Plaintiff should not have to be made to prove that but for Defendant's discriminatory acts, his place of employment would be considered to be Washington,

DC. In fact, the lack of adequate realty in the relatively small and compact Washington, DC impels the Federal government to locate branches and satellite offices throughout the tri-state area. This in no way alters the fact that all major management and controlling decisions are made from the headquarters in Washington, DC.

Furthermore, Plaintiff is domiciled in Silver Spring, and Defendant can show no legal necessity to transfer this suit to Virginia since Defendant has already conceded that all pertinent personnel records are kept in Vermont. It is evident that Defendant, with its power and almost limitless resources, merely wishes to 'strong-arm' this *pro-se* Plaintiff by seeking to have this case transferred from Washington, DC, where this suit properly belongs, to the Eastern District of Virginia. Therefore, based on the above, Defendant's motion to dismiss should be quashed, and Plaintiff's Complaint of harassment, illegal discrimination and retaliation be sustained and prosecuted in the United States District Court for the District of Columbia.

## D. ALLEGED FAILURE ON PLAINTIFF'S PART TO EXHAUST HIS ADMINISTRATIVE REMEDIES ...

Defendant's assertion that Plaintiff failed to exhaust his administrative remedies is purely inaccurate. The fact is that Plaintiff did follow all the steps he was required to follow, including writing to Ms. Diane Weaver, Director of Office of Equal Employment Opportunity concerning his dissatisfaction with the Agency's framing of his complaint, as well as pertaining to what actually transpired at his employment location.

Also, contrary to Defendant's assertions on page 3 of their Opposition, Plaintiff did seek EEO counseling, leading to' investigations' by the EEO Counselor that culminated in the profound statement by Ms. Phyllis Howard that there was no way that she would consent to Plaintiff's transfer from under her jurisdiction to a comparable position at Headquarters. Ms. Howard seemed to have the belief that every employee had to work for over 25 years before contemplating advancing to a responsible position as she did, regardless of his or her educational background. Plaintiff only initiated the lawsuit after in became evident that Administrative Law Judge in charge of the case was not going to reconsider his decision to issue a Decision without a hearing.

## IV. CONCLUSION

For the reasons outlined above, this Plaintiff moves that Plaintiff be granted judgment as a matter of law. In the alternative Plaintiff moves that Defendant's motion to dismiss or for summary judgment be quashed and that this suit be maintained and prosecuted in the United States District Court for the District of Columbia after the requisite discovery has been made.

Respectfully submitted,

_____
Charles B. Sam
3616 Pear Tree Court, #32
Silver Spring, MD 20906
(301) 871-0669

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of *Plaintiff's Motion to Dismiss Defendant's Opposition to Plaintiff's Motion to Quash Defendant's Motion to Dismiss, for Summary Judgment, or to Transfer Plaintiff's Amended Complaint* was made by first class mail this 17th day of May, 2006 to:

Mark A. Allen, Esq.
Department of Homeland Security
U.S. Citizenship & Immigration Service
20 Massachusetts Ave., NW
Washington, DC 20529

Beverly M. Russell
Assist U.S. Attorney
U.S. Attorney's Office for the
 District of Columbia
555 4th Street, NW, Room E-4915
Washington, DC 20530

---
CHARLES B. SAM
*Pro se* Plaintiff